Vincent James John Romeo
Nevada Bar No.: 9670
VJJR Attorney at Law
3692 Poker Hand Court
Las Vegas, NV 89129

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## For the
## DISTRICT OF NEVADA

| | |
|---|---|
| TECHNOLOGY ONLINE, LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> URBAN HOME, a California corporation, <br><br> Defendant. | ) Case No.: <br> ) <br> ) Dept.: <br> ) <br> ) <br> ) <br> ) **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF** <br> ) <br> ) **AND** <br> ) <br> ) **JURY DEMAND** <br> ) <br> ) |

## FIRST AMENDED COMPLAINT

### Nature of the Case

By its Complaint, Plaintiff Technology Online, LLC ("Plaintiff") seeks declaratory relief, as set forth below, to establish that its registration and use of the domain name <urbanhome.com> is not unlawful and that it is the rightful and proper owner of said domain name.

### PARTIES

1.    Plaintiff Technology Online, LLC ("Plaintiff") is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada.   Plaintiff is a citizen of Nevada.

2.    Plaintiff is informed and believes and based thereupon alleges that Defendant Urban Home ("Defendant") is a California corporation, with its principal places of

1

business in Oxnard, California.  Plaintiff is informed and believes and based thereupon alleges that Defendant is a citizen of California.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 (original jurisdiction over Lanham Act claims), 28 U.S.C. §§ 1331 (federal question) and 1338(a) (jurisdiction to adjudicate federal trademark claims).

4.    Venue is proper in the State of Nevada because the parties agreed to litigate any disputes arising out of the decision entered by World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center in accordance with the terms of the Uniform Dispute Resolution Policy ("UDRP"), as affirmed in the Introduction Paragraph of the Second Amended Complaint filed by Defendant in the WIPO proceeding. See Exhibit "A."   Section ¶ 3(b)(xiii) of the UDRP provides that "Complainant [here Defendant] will submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to the jurisdiction of the courts in at least one specified Mutual Jurisdiction."   "Mutual Jurisdiction" is defined as "a court jurisdiction at the location of either (a) the principal office of the Registrar (provided the domain-name holder has submitted in its Registration Agreement to that jurisdiction for court adjudication of disputes concerning or arising from the use of the domain name) or (b) the domain-name holder's address as shown for the registration of the domain name in Registrar's Whois database at the time the complaint is submitted to the Provider."   See Exhibit "B."   At Paragraph IX of the Second Amended Complaint, Defendant agreed to mutual jurisdiction at the domain name holder's address, i.e. the State of Nevada.

5.    Here, the domain name holder's address is 3395 S. Jones Blvd., Suite No. 115, Las Vegas, Nevada 89146.  This was the correct address for Plaintiff, the holder of the Domain at the time the Complaint was filed in the WIPO proceeding, as evidenced by the allegations made by Defendant in the Second Amended Complaint which accurately identified Plaintiff, a citizen of Nevada, as the Respondent.

////

FIRST AMENDED COMPLAINT

# COMMON ALLEGATIONS

6.    The location of individual sites on the internet is denoted by an internet protocol ("IP") address composed of a string of four groups of digits separated by periods. Each site has a unique numeric internet address. For ease of access, the numeric addresses typically correspond to more easily remembered alphanumeric "domain names" (such as <google.com>), which internet users can enter in their web browser to access specific sites.  Domain names provide a means of accessing information located on the Internet at a specific IP address.

7.    A domain name is composed of two parts, separated by a period. The portion to the right of the period, *i.e.*, the "com" in <google.com>, is known as the "top level domain" or "TLD."  The portion to the left of the period, generally a series of a numbers and letters chosen by the operator of the site, *i.e.*, the "google" in <google.com>, is known as the "second level domain" or "SLD."

8.    One wishing to use a specific domain name must register the name with one of numerous competing companies known as registrars.   The United States federal government adopted a policy favoring competitive domain name registration and in furtherance of this policy, a private, non-profit corporation, the Internet Corporation for Assigned Names and Numbers ("ICANN"), was formed to assume responsibilities for managing the allocation of Internet Protocol numbers and the domain name system.

9.    Customers seeking to register specific domain names interact with registrars. Thus, an individual seeking to use a domain name submits an online application to a registrar.  If someone submits an application for a particular domain name that already exists in the publicly accessible database of information concerning all domain names in a TLD, known as the Whois (or WHOIS) database by virtue of a prior registration, that name cannot be registered again, and the applicant is advised that the sought domain name is unavailable.  If there is no existing registration for a given SLD name within a given TLD, however, that domain name is considered available and generally may be registered

FIRST AMENDED COMPLAINT

on a first-come, first served basis. A registrar must be accredited by ICANN for each TLD in which it operates.

10.   As part of the accreditation process, all registrars must sign the ICANN Registrar Accreditation Agreement (the "ICANN RAA").   ICANN RAA, in turn, mandates that all accredited registrars implement the UDRP, as promulgated by WIPO, to resolve domain name disputes.

11.   Once registered, a domain name is not required to be tied to an active website, be capable of receiving e-mail at the address or otherwise be functional.  Nonetheless, there are numerous ways in which domain names may be commercially exploited.  A legitimate business practice on the internet is to administer domain names corresponding to common words, phrases, first names, surnames, colloquialisms and generic terms, such as "urban" "home".   These generic domains are then used to drive traffic to a corresponding landing page, which is populated by syndicated advertisements by Google, Yahoo or some other search engine.  Alternatively, domain names can simply collect and re-direct traffic resulting to these websites as a result of links from search engines, which traffic consistently increases in accordance with the lifespan of the domain in question due to the manner in which search engine catalogues of sites are maintained and developed.

12.   A browsing user ending up at such a page may end up clicking on an advertisement offering products or services loosely related to the domain.  For instance, the links appearing at a landing page for <watches.com> may include a link leading to the website for Rolex.  Each click results in pay-per-click advertising revenue flowing to the parking company administering the landing page and, eventually, to the registrant of the domain.  Alternatively, the user can take advantage of whatever services or products are offered at the site in question.

13.   The Domain in question was initially registered on March 30, 1998.   It subsequently was transferred to Plaintiff, which was to be used as a limited liability vehicle for administering the Domain.
////

FIRST AMENDED COMPLAINT

14.   In December of 2012, Defendant initiated a WIPO proceeding with respect to the Domain, under proceeding no. D2012-2437.

15.   On March 1, 2013, the WIPO center remitted a decision entered in the WIPO proceeding by a single panelist which instructed the transfer of the Domain on the grounds of a finding of a bad-faith registration in view of the existence of Defendant's registered mark, "Urban Home," whose registration post-dates the original registration date of the Domain.

16.   In so doing, the panel ignored the applicable provisions of the UDRP, their interpretations by other panelists presiding over similar matters as well as the recent decision of the Ninth Circuit Court of Appeals entered on September 22, 2011, in a matter entitled *GoPets Ltd., v. Hise*, 657 F.3d 1024 (9th Cir. 2011).   The *GoPets* decision established that "bad faith," which is mandatory to warrant a transfer under the Policy, is determined exclusively at the time of the original registration.

17.   Here, it is undisputed that the Domain was originally registered on March 30, 1998.  Defendant, for its part, claims rights in the term "Urban Home" dating back to the year 2000 but adduces no proof thereof.  Rather, the claim is predicated upon a Trademark Registration procured by Defendant on July 19, 2012, **more than 14 years after the date on which the Domain was originally registered.** Consequently, under established legal principles Defendant has not and cannot prove the requisite "bad faith" at the time of the registration required under the Policy and the Panel reached the wrong conclusion.  Its finding must be reversed.

18.   For these reasons, Plaintiff contests the findings of the WIPO panel and seeks a declaration by this Court that its use is not unlawful, amounting to a legitimate exploitation of the Domain, whose registration predated any rights held by Defendant in the term "Urban Home" as permitted under Section K of the Uniform Domain Name Resolution Policy:

> **k.  Availability of Court Proceedings.** The  mandatory  administrative
> proceeding requirements set forth in Paragraph 4 shall not prevent either you

FIRST AMENDED COMPLAINT

or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded. If an Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. (In general, that jurisdiction is either the location of our principal office or of your address as shown in our Whois database. See Paragraphs 1 and 3(b)(xiii) of the Rules of Procedure for details.) If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name.

Exhibit "B."

## **COUNT I**

### **(Declaratory Relief)**

19.     Plaintiff refers to, repeats and incorporates by reference paragraphs 1 through 18, inclusive, of this Complaint as though fully set forth herein.

/ / / /

6

FIRST AMENDED COMPLAINT

20.     In registering the Domain, Plaintiff did not have a bad faith intent, as provided in Paragraph 4 of the UDRP.

21.     The Domain is not identical, confusingly similar to, or dilutive of Defendant's claimed mark in the term "Urban Home."

22.     Plaintiff believed and had reasonable grounds to believe that its registration and use of the Domain was a fair use or otherwise lawful use as provided for by in the UDRP.

23.     Plaintiff has given notice to Defendant, through the registrar, of its intent to file an action to establish that the Plaintiff's registration and use of the Domain is not unlawful under the UDRP or any statute addressing an appeal of a WIPO Panel decision.

24.     Plaintiff seeks control of the Domain and a declaration that it is the owner of the Domain.

////

////

////

////

////

////

////

////

////

////

////

////

////

////

////

////

7

FIRST AMENDED COMPLAINT

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.    Declaring that Plaintiff's registration and use of the domain name <urbanhome.com> is not unlawful

2.    Declaring that Plaintiff is not required to transfer the domain name <urbanhome.com > to Defendant;

3.    Awarding Plaintiff its costs and attorneys' fees; and

4.    Providing all such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury in this action of all issues so triable.


Dated this 7th day of March, 2013


VJJR Attorney at Law


By: /s/
VINCENT JAMES JOHN ROMEO
Nevada Bar Number 9670
3692 Poker Hand Court
Las Vegas, NV 89129
(702) 530-9242
Attorney for the Plaintiff
TECHNOLOGY ONLINE, LLC

8

FIRST AMENDED COMPLAINT